**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PLAN BOARD OF SUNKIST RETIREMENT PLAN,**<br>**Plaintiff,**<br>**v.**<br>**HARDING & LEGGETT, INC., and DOES 1 through 10, inclusive,**<br>**Defendants.** | **CASE NO. CV 05-8659 AG (RCx)**<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| **HARDING & LEGGETT, INC., and DOES 1 through 10, inclusive,**<br>**Counter Claimant,**<br>**v.**<br>**PLAN BOARD OF SUNKIST RETIREMENT PLAN; THE SUNKIST RETIREMENT PLAN; and ROES 1 through 10, inclusive,**<br>**Counter Defendants** | |

This case concerns the Sunkist Retirement Plan ("Plan"). Plaintiff and Counter Defendant Plan Board of Sunkist Retirement Plan ("Plaintiff") seeks to collect withdrawal liability contribution under the Plan from Defendant and Counter Claimant

Harding & Leggett, Inc. (“Defendant”). Defendant seeks reimbursement from Plaintiff in its Counterclaim for overpayment of a withdrawal liability contribution under the Plan.

**FINDINGS OF FACT**

After reviewing the evidence and evaluating the credibility of the witnesses and other evidence, the Court makes the following findings of fact, including any findings of fact found in the Conclusions of Law.

1. The following facts are admitted and require no proof:

1.1 The Plan is a multiple-employer pension benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. (“ERISA”).

1.2 Plaintiff is the board established and appointed under the Plan to administer the Plan.

1.3 Defendant began as a contributing employer to the Plan in 1970.

1.4 Defendant sent notice to the Plan Administrator in December 2004 of its intention to withdraw from the Plan effective March 31, 2005.

1.5 In 2005, Plaintiff assessed Defendant withdrawal liability in the amount of $1,248,072.

1.6 In 2005, Defendant made a payment to the Plan of $800,000.

2. This is an action under ERISA. Under 28 U.S.C. § 1331, Federal District Courts have original jurisdiction of all civil actions arising under the laws of the United States. Venue is proper in this Court under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the Plan is administered in part in the Central District of California. The facts requisite to federal jurisdiction are admitted.

3. In 1997, the Plan was amended to provide an enhanced benefit for participants who experience a “job elimination.”

4. In 2002, the Plan document was restated with the intention of incorporating

all amendments to the Plan through January 2002. In the drafting of the 2002 Restatement, the 1997 Amendment was inadvertently left out of the Plan document.

5. There was never a vote or other action to remove the job elimination benefit, and the Plan has continued to provide it, after 2002, to participants who qualify. The language establishing the job elimination benefit was restored to the Plan document in 2005. At least one participant of Defendant has received the job elimination benefit since 2002.

6. The Plan requires withdrawing employers to make a withdrawal liability contribution if any unfunded benefit liabilities exist at the time of withdrawal.

7. Section 2.1 of the Plan provides that Plaintiff shall determine the unfunded benefit liabilities and it shall do so using the hypothetical assumption that the Plan was terminated under the provisions of Section 4041 of ERISA on the last day of the plan year before the withdrawal.

8. Plaintiff's determination of unfunded benefit liabilities was made using the PBGC prescribed mortality and interest rate assumptions.

9. Defendant's contention that the PBGC actuarial assumptions do not accurately reflect market annuity pricing for terminating Plans has been expressly rejected by the PBGC, which explains that the combination of PBGC's mortality assumption and interest assumptions "provides the best fit for average market prices" of annuities.

10. Section 6.3(a)(8) of the Plan provides that "[a]ll actions of the [Plan Board] shall be conclusive on all persons interested in the Plan except to the extent otherwise specifically indicated herein."

11. Section 4.13 of the Plan provides that a benefit shall be deemed forfeited when payment cannot be made after a diligent search to find the participant or beneficiary, "however, such benefit will be reinstated for the Participant's or Beneficiary's benefit if a claim [is] made for the forfeited benefit by the Participant or Beneficiary."

12. As of December 31, 2004 unfunded benefit liabilities existed totaling $118,063,000.

13. Defendant's share of those unfunded benefit liabilities was $1,248,072.

14. The terms of the Plan require that Defendant pay the assessed withdrawal liability within 90 days of the assessment.

15. Portions of the expert testimony provided by Defendant was unreliable. Surprisingly, Defendant's expert did not know what "LexisNexis" is. Plaintiff's witnesses were more credible.

16. The purpose of withdrawal liability is to safeguard participants in the Plan by requiring a withdrawing employer to fund its share of the Plan obligations incurred during its association with the Plan. The Central District has noted that withdrawal liability not only protects "the reliance interests of employees, but also the interests of other employers who elect to remain in the pension plan program . . . . Those who did would have to assume an ever-increasing share of the liability as the number of contributing employers decreased." *S & M Paving, Inc. v. Constr. Laborers Pension Trust of S. Cal.*, 539 F. Supp. 867, 873-75 (C.D. Cal. 1982).

17. If employers' withdrawal liabilities are understated, employers will have an economic incentive to withdraw from the Plan. Such withdrawals would be expected to worsen the Plan's financial status, and thus are not in the interests of Plan participants and beneficiaries. The Court finds that in these difficult economic times, this factor is particularly significant.

## **CONCLUSIONS OF LAW**

The Court makes these conclusions of law, including any conclusions of law found in the Findings of Fact.

1. Plaintiff's determination of unfunded benefit liabilities was made in accordance with Section 2.1 of the Plan.

2. Congress, through ERISA, has placed a fiduciary duty on Plaintiff to administer the Plan "solely in the interest of the participants and beneficiaries . . . ." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

3. The general rule of ERISA is a "rule of deference to fiduciary decision-making," and Congress did not intend for courts "to substitute their judgments for the judgments of fiduciaries on decisions involving actuarial rates." *British Motor Car Distrib., Ltd. v. San Francisco Auto. Indus. Welfare Fund*, 882 F.2d 371, 376 (9th Cir. 1989). Plaintiff's fiduciary responsibilities include the determination and assessment of withdrawal liability.

4. Where, as here, discretionary authority is expressly conferred to Plaintiff, "the administrator's decision is reviewed under abuse of discretion." *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1066 (9th Cir. 1999).

5. Plaintiff's determination of unfunded benefit liabilities was not arbitrary and capricious, nor was such determination an abuse of Plaintiff's discretion.

6. Defendant is bound by Plaintiff's determination of unfunded benefit liabilities.

7. Regulations issued by the PBGC under ERISA require that "in the absence of proof of death, individuals not located are presumed living." 29 C.F.R. § 4050.2 (definition of "missing participant").

8. Liabilities related to participants and beneficiaries who are over 65 years old and have not been located should not be disregarded for purposes of determining the Plan's liabilities in the event the Plan is terminated, and the Plan need not assume that a certain percentage of participants under age 65 will never claim their benefits. This is because under Section 4.13 of the Plan, ERISA § 4050, 29 U.S.C. § 1350, 29 C.F.R. § 4050.2, and 29 C.F.R. § 4050.3, such liabilities must be paid upon a plan termination, even if a participant is never located.

9. Defendant is not entitled to a refund because its withdrawal liability was not overstated or overpaid. Further, under ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1), plan

assets can never inure to the benefit of an employer. Alleged actuarial errors are not mistakes of fact and do not fall into the exception to this rule provided by ERISA. *British Motor*, 882 F.2d 375-76 (9th Cir. 1989).

10. Defendant owes unpaid withdrawal liability totaling $448,072, plus interest at 8% per annum until paid.

**DISPOSITION**

Plaintiff's counsel is directed to prepare the judgment and serve it on Defendant by March 31, 2010. Defendant shall have 14 days from the date of service of the proposed judgment to object to the proposed judgment. If no objection is received within 14 days, the judgment will be entered immediately, and Federal Rule of Civil Procedure 52(b) will apply on entry of the judgment.

IT IS SO ORDERED.

DATED: March 17, 2010

Andrew J. Guilford
United States District Judge